

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

DENNIS CLAYPOOL, individually ) Civil No. CV04 00570 ACK KSC
and as Guardian Ad Litem for )
KRISTEN CLAYPOOL, a minor, ) <u>DEPOSITION OF</u>
SHERYL CLAYPOOL, SCOTT ) TERRY DONNELLY
CLAYPOOL, and KRISTEN CLAYPOOL) May 17, 2005
) 8:50 a.m.
            Plaintiffs, )
)
    vs. )
)
CAPTAIN ANDY'S SAILING, INC., )
BLUE DOLPHIN CHARTERS, LTD. )
and BLUE DOLPHIN DIVING, INC.,)
)
            Defendants. )
_____)
MATTHEW ISHAM, individually ) Civil No. CV04-00559 ACK KSC
and as Guardian Ad Litem for )
HAYDEN ISHAM, a minor, )
ROXANNE BEST ISHAM, )
)
            Plaintiffs, )
)
    vs. )
)
BLUE DOLPHIN CHARTERS, LTD. )
and BLUE DOLPHIN DIVING, LTD.,)
CAPTAIN ANDY'S SAILING, INC., )
)
            Defendants. )
_____)
In the Matter of ) Civil No. CV05-00017 HG LEK
The Complaint of CAPTAIN )
ANDY'S SAILING, INC., a Hawaii)
corporation, as pro hac vice )
owner, and EVANS PACIFIC, LTD,)
a Hawaii corporation, as owner)
of M/V SPIRIT OF KAUAI, O.N. )
995776, for exoneration from )
or limitation of liability. )
_____)
                          -continued-

**EXHIBIT _A_**

1               -continued-

2 IN THE MATTER OF THE COMPLAINT) Civil No. CV05-00037 HG BMK
OF THE BLUE DOLPHIN CHARTERS, )
3 LTD. AND TERRY DONNELLY AS    )
OWNERS OF THE VESSEL M/V BLUE )
4 DOLPHIN, O/N 1082212, FOR     )
EXONERATION FROM AND/OR      )
5 LIMITATION OF LIABILITY.      )
_____)

6

7

8             DEPOSITION OF TERRY DONNELLY

9

10 Taken on behalf of Plaintiffs Dennis Claypool, individually
and as guardian ad litem for Kristen Claypool, a minor,
Sheryl Claypool, Scott Claypool, and Kristen Claypool at
11 the American Savings Bank Tower, Suite 1901, 1001 Bishop
Street, Honolulu, Hawaii, commencing at 8:50 a.m. on May
12 17, 2005, pursuant to Notice.

13

14

15

16

17

18

19

20 Transcribed by:  WILLIAM T. BARTON, RPR, CSR #391
21              Court Reporter, State of Hawaii

22      PACIFIC REPORTING SERVICES UNLIMITED
           Suite 1470, Makai Tower
23            733 Bishop Street
           Honolulu, Hawaii 96813
24           (808) 524-PRSU

25

1    A.    Well, our procedure was to put a dive flag up

2  when people were scuba diving.  And yes, our procedures

3  were to put up a dive flag.

4    Q.    Now, did you ask Captain Lambdin, either in the

5  original phone call or after the return to Port Allen,

6  whether there were any dive floats in the water?

7    A.    I did.

8    Q.    And what did Captain Lambdin tell you about that?

9          MS. BLACK:  Objection.  Asked and answered.

10    A.    The impression was that, no, there was not a dive

11  float in the water.

12    Q.    Were there any operating procedures or standing

13  orders concerning the use of dive floats at Mokol'e?

14    A.    Yes.

15    Q.    And would you tell us what those rules and

16  procedures were?

17    A.    The dive instructors were to take dive floats

18  with them when they were doing scuba dives at Mokol'e.

19    Q.    Were they to take those floats with them every

20  single time scuba divers went in the water?

21    A.    Yes.

22    Q.    Were the dive floats to remain deployed until the

23  scuba divers returned safely to the vessel?

24    A.    Yes.

25    Q.    If the evidence shows there were no dive floats

1  deployed at Mokol'e on the day of the accident, can you say

2  as founder and owner of the Blue Dolphin Charters, Limited

3  that your employees were operating in violation of in-house

4  safety procedures?

5       MS. BLACK:  Objection.  Vague and ambiguous.

6  Calls for a legal conclusion.

7       MR. MILLER:  Join.

8    A.    They were told to take a dive float with them

9  whenever they did scuba diving charters at Mokol'e's.  Yes,

10 they would be violating an in-house procedure rule.

11   Q.    You said you spoke to Megan Langley.

12       Was that after the vessel returned to Port Allen?

13   A.    I don't recall.

14   Q.    Well, do you recall whether it was a

15 person-to-person conversation or over the phone?

16   A.    I remember talking to Megan when the boat came

17 back to the harbor.  I remember asking her, as well, Did

18 Matt have the float in the water?

19   Q.    What did Megan tell you?

20   A.    She said she didn't think so.

21   Q.    Did you specifically ask Megan whether there was

22 a dive flag flying?

23   A.    I did not.

24   Q.    And why not?

25   A.    I don't know.

1          MR. HILLSMAN:  It is.

2    BY MR. HILLSMAN:

3          Q.    Who was in charge of the Blue Dolphin?  Was it,

4    indeed, a licensed master, David Lambdin?

5          A.    Dave Lambdin was the master captain of the

6    vessel.

7          Q.    And as master captain of the vessel, he is,

8    indeed, in overall charge of the vessel's operation, is he

9    not?

10         A.    Yes.

11         Q.    He was ultimately responsible for the safety of

12   the vessel during the trip?

13         A.    Yes.

14         Q.    He was ultimately responsible for the safety of

15   all the passengers during the trip, was he not?

16         A.    During what aspects of it?  When the boat parks

17   and the people get in the water, I've got dive instructors

18   that are responsible, as well.

19         And, for instance, the scuba instructor is

20   ultimately responsible for the divers in the water, as well

21   as the lifeguard is responsible for the snorkelers in the

22   water.

23         And the safety officer is responsible for people

24   on the boat and snorkelers in the water and divers in the

25   water.  And boat captain, yes, is responsible in the

1    A.    Sure.

2    Q.    Did you make it clear to Matt Isham that there

3    should be a dive flag flying whenever divers were in the

4    water?

5    A.    Yes.

6    Q.    Prior to July 20, 2004?

7    A.    Yes.

8    Q.    Did you make it clear to Megan Langley that there

9    should be a dive flag flying whenever divers are in the

10   water at Mokol'e, prior to July 20, 2004?

11   A.    Yes.

12   Q.    Did you make it clear to Eric Trout that there

13   should a dive flag flying whenever divers were in the water

14   at Mokol'e, prior to July 20, 2004?

15   A.    Yes.

16   Q.    Did you also make it clear to each of those

17   individuals, prior to July 20, 2004, that there should be a

18   dive float in the water every single time that they were

19   allowed to dive at Mokol'e?

20   A.    Yes.

21   Q.    How long had Matt Isham worked for you, prior to

22   July 20, 2004?

23   A.    He had been with me more several years.   Like

24   three or four years.

25        I'm sure I could look at records.   I've seen the

```
 1                          CERTIFICATE
 2   STATE OF HAWAII        )
 3                          )     SS.
 4   COUNTY OF HONOLULU     )
 5        I, WILLIAM T. BARTON, RPR, Certified Shorthand
 6   Reporter, State of Hawaii, do hereby certify that on May
 7   17, 2005 at 8:50 a.m. there appeared before me TERRY
 8   DONNELLY, the witness whose deposition is contained herein;
 9   and that prior to being examined was duly sworn; that I am
10   neither counsel for any of the parties herein, nor
11   interested in any way in the outcome of this action;
12        That the deposition herein was by me taken down in
13   machine shorthand and thereafter reduced to print via
14   computer-aided transcription under my supervision; that the
15   foregoing represents a complete and accurate transcript of
16   the testimony of said witness to the best of my ability.
17        Dated this 19th day of May 2005 at Honolulu, Hawaii.
18
19   _____
20        WILLIAM T. BARTON, CSR No. 391
21        Notary Public, State of Hawaii
22        My Commission expires August 7, 2005
23
24
25
```