McCORRISTON MILLER MUKAI MacKINNON LLP

JONATHAN H. STEINER        #6084
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, HI  96813
Telephone:  (808) 529-7300
Fax:  (808) 535-8038
Email address:  steiner@m4law.com

Attorney for Interested Party
SURETY AMERICAN HOME ASSURANCE
COMPANY and LEXINGTON
INSURANCE COMPANY

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF BLUE DOLPHIN CHARTERS, LTD., AND TERRY DONNELLY, AS OWNERS OF THE VESSEL M/V BLUE DOLPHIN, O/N 1082213, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY, | CIVIL NO.: CV05-00037 HG BMK (Consolidated) |

133987.1

| | |
|---|---|
| MATTHEW ISHAM, individually and as Guardian Ad Litem for HAYDEN ISHAM, a minor; ROXANNE BEST ISHAM,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>BLUE DOLPHIN CHARTERS, LTD. And BLUE DOLPHIN DIVING, LTD., CAPTAIN ANDY'S SAILING, INC., DOES 1-50,<br><br>　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 04-00559 HG-BMK |
| DENNIS CLAYPOOL, SHERYL CLAYPOOL, individually and as Guardian ad Litem for KRISTEN CLAYPOOL, a minor, SCOTT CLAYPOOL, AND KRISTEN CLAYPOOL,<br><br>　　　　　Plaintiffs,<br><br>　vs.<br><br>CAPTAIN ANDY'S SAILING INC., BLUE DOLPHIN CHARTERS, LTD. AND BLUE DOLPHIN DIVING, LTD.<br><br>　　　　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CIVIL NO. 04-00570 HG-KSC<br><br>SURETY AMERICAN HOME ASSURANCE COMPANY AND INTERESTED PARTY LEXINGTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ENFORCING LIABILITY ON BOND, FILED ON MARCH 8, 2006; DECLARATION OF JONATHAN H. STEINER; EXHIBITS "A" – "L"; CERTIFICATE OF SERVICE<br><br><u>Hearing:</u><br>Date:　April 17, 2006<br>Time:　10:30 a.m.<br>Judge:　Honorable Helen Gillmor |

133987.1

SURETY AMERICAN HOME ASSURANCE COMPANY AND INTERESTED PARTY LEXINGTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ENFORCING LIABILITY ON BOND, FILED ON MARCH 8, 2006

## I.     INTRODUCTION

COME NOW Surety American Home Assurance Company and Interested Party Lexington Insurance Company (hereinafter collectively "Surety"), by and through their attorneys, McCorriston Miller Mukai MacKinnon LLP, and opposes Plaintiff/Limitation Claimant Matthew Isham's Motion for Judgment Enforcing Liability on Bond (hereinafter "the Motion"). It is Surety's position that, as Blue Dolphin Charters, Ltd. ("BDC") has voluntarily effectively waived the right to limitation of liability, and as the enforcement of the subject bond is being sought as to a claim which was never insured by the insurance company which placed the subject bond, this Court should exercise its equitable powers and release Surety from its obligations under the bond.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Accident.

On July 20, 2004, while engaged in scuba activities, Matthew Isham ("Isham") and Dennis Claypool were allegedly struck by the hull and propellers of a ship *M/V Spirit of Kauai.* At the time of the accident, Dennis Claypool was a customer and passenger on the vessel *M/V Blue Dolphin* ("the Subject Vessel"), and Isham was a crew member of the Subject Vessel and employee of BDC. As a

133987.1

result of the accident, Dennis Claypools' arm was significantly injured, and one of Isham's legs was severed.

During the tour, the crew of the Subject Vessel consisted of three scuba instructors, as well as the captain of the vessel. Relevant to this Motion, two of the scuba instructors, Isham and Eric Trout ("Trout") held PADI insurance policies, issued by Lexington, which provided for liability insurance. The third instructor, Megan Langley ("Langley"), held a NAUI policy which was not issued by Lexington, but rather was issued by another insurance provider, Markel Insurance Company.

### B.  The Applicable Insurance.

Isham and Trout are both insured under Lexington policy no. 1323464 ("the Policy"). See Exhibit "A". Isham and Trout are each named insured pursuant to a certificate of insurance issued to them for an "occurrence" that is the result of any negligent acts, errors or omissions in the rendering or failure to render "professional services" as described in the declarations (SCUBA diving, snorkeling and swimming instruction and supervision and emergency first aid training). See Exhibits "B" and "C". "Professional Services" is defined as "[t]hose services rendered by certified instructors, assistant instructors, dive masters, snorkel or swim instructors, dive control specialists (divecon)." See

Exhibit "A". Each of the two certificates of insurance carries a $1.0 million limit as to liability for each of the two named insureds (Isham and Trout).

The Policy provides additional insured coverage for BDC under Endorsement #001, however, such coverage is limited as follows:

> 1. The facility is only an additional insured with respect to liability arising out of the regular and usual operations of the Named Insured in connection with the Named Insureds teaching and/or supervising of SCUBA or snorkeling activities sanctioned and approved by PADI.
>
> * * *
>
> 2. The insurance provided to such additional insureds does not apply to "bodily injury" or "property damage" arising out of a SCUBA diving training agency's providing or failing to provide:
>
>> a. training or educational standards or educational materials to any insured; or
>>
>> b. supervision of SCUBA instructors, assistant instructors or dive masters.

See Exhibit "A".

Endorsement #003 to the Policies also provide additional insured coverage for retail dive stores and dive boats from which an instructor, assistant instructor or dive master operates, but only for the regular operation of the named insured in connection with his or her teaching or supervising of scuba or snorkeling activities sanctioned and approved by PADI. Id.

Both Policies have similar exclusions. The Exclusions to the Policies provide, *inter alia*, as follows:

> This insurance does not apply to:
>
> . . .
>
> G.  Bodily Injury, Personal Injury and/or Advertising Injury to:
>     (1) An employee of the insured arising out of and in the course of employment by the insured, or
>     (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.
>
> This exclusion applies;
>     (1) Whether the insured may be liable as an employer or in any other capacity, and
>     (2) To any obligation to share damages with or repay someone else who must pay damage because of the injury.

See Exhibit "A" at 2.

The policy specifically provides that "[t]he word "insured" means any person or organization qualifying as such under **SECTION II - WHO IS AN INSURED**."

Id. at 1.

Section II states that "[e]ach of the following is an insured under this insurance to the extent set forth below.

> . . .
>
> C.  Any additional insured named by endorsement or certificate to this policy. . . .

Id. at 5.

BDC is an additional insured pursuant to endorsement Nos. 1 and 3, as set forth therein. Therefore, for the purposes of coverage for BDC, Exclusion G precludes coverage for any claim of an employee of BDC for bodily injury. Since Isham was an employee of BDC, claims against BDC by Isham are excluded from coverage under the policy. Both BDC as well as Isham have been informed of the fact that Isham's Jones Act claims against BDC are not covered under the Lexington Policies, and neither has disputed this position.

C.     **The Personal Injury Actions and the Limitations Action.**

On September 13, 2004, the Claypools filed a lawsuit, *Claypool et al. v. Captain Andy's Sailing, Inc. et al.*, Civil No. 04-00570 HG-KSC ("the Claypool Lawsuit"). On September 14, 2004, Isham and family members filed a lawsuit, *Isham et al. v. Blue Dolphin Charters, Ltd, et al.*, Civil No. 04-00559 HG-BMK ("the Isham Lawsuit").

Upon tender of the Claypool Lawsuit, Lexington agreed to provide Isham and BDC a defense for the claims asserted by the Claypools, and retained the law firm Goodsill Anderson Quinn & Stifel ("GAQ&S") to provide that defense. Lexington did not agree, however, to provide a defense as to claims asserted by Isham in the Isham Lawsuit against BDC, as these claims were not covered under

either insurance policy.  Instead, BDC retained its own individual counsel, Robert Miller, to defend those claims.[1]

As part of the defense, and in an attempt to limit the liability of BDC, on January 19, 2005, defense counsel retained by Lexington to represent BDC filed a Limitation Action, *In re The Complaint of Blue Dolphin Charters, Ltd. et al.*, Civil No. 05-00037 HG-BMK ("the Limitation Action").  Upon request of counsel for BDC, Lexington obtained a bond American Home Assurance Company, and filed said bond herein under the supplemental rules for certain admiralty and maritime claims, in the amount of $435,000, on January 21, 2005 ("the Subject Bond").  See Exhibit "D".  On August 30, 2005, the Limitation Action, the Claypool Lawsuit, and the Isham Lawsuit were consolidated for trial.

---

[1] While GAQ&S filed an answer on BDC's behalf to Matthew Isham's complaint asserting seaman's claims, Lexington never agreed to provide a defense on those claims.  Rather, prior to when the Answer was filed on November 19, 2004, Lexington informed GAQ&S that it would not be providing BDC with a defense as to the Ishams' claims, but that it would not object to GAQ&S simultaneously representing BDC under separate arrangement with BDC and its owner, Terry Donnelly.  See Exhibit "H" hereto, copy of Declaration of Cheryl Peterson, originally filed in regards to the Motion filed on January 13, 2006, discussed *infra*, at ¶ 3.  At no time did Lexington instruct or authorize GAQ&S to defend BDC as to the claims asserted by the Ishams against BDC under a Lexington policy.  Id. at ¶ 4.  Apparently due to timing issues and to work out personal representation, certain pleadings were filed by GAQ&S in connection with Matthew Isham's seaman's claims.  After being informed of Lexington's coverage position, Terry Donnelly and BDC were billed separately by GAQ&S for work performed on behalf of BDC in connection with the seaman's claims.  Id. at ¶ 6.  Thereafter, BDC retained its own counsel in that matter, and substitution of Robert Miller as counsel in said action was filed on April 21, 2005.

### D. Settlement of Isham's Claims and Continued Provision of Defense by Lexington

On or about July 12, 2005, after extensive negotiations, a settlement was reached as to the Claypool's claims against Isham. The terms of said settlement are confidential, and therefore cannot be disclosed in this publicly filed document. However, the settlement extinguished all of the claims by the Claypools against Isham, and, although it did not release BDC from liability, it did potentially adhere to the benefit of BDC, depending on each party's proportionate share of fault. The settlement was negotiated with the participation of Robert Miller, BDC's personal counsel, and was completed by BDC not only with the agreement of BDC and its personal counsel, but also at the insistence of BDC. See Exhibit "E".

Even after settling out the Claypools' claims against Isham, Lexington continued to provide a defense to BDC, under the Trout Policy. Even though Trout had not been sued, and has still not been sued herein, Lexington determined that the potential for coverage existed due to BDC's potential liability which might arise of the alleged acts and omissions of Trout.[2] Lexington initially agreed to provide this defense under a reservation of rights. See Exhibit "F: Thereafter, upon further investigation and analysis, Lexington withdrew said reservation of rights. See Exhibit "G".

---

[2] Lexington does not admit that any alleged act or omissions resulting in liability based on actions by Trout should result in liability, but rather, specifically denies same.

As part of the continued defense, Lexington continued to leave the Subject Bond in place, as part of the Limitation Action.

### E. Previous Motion to Withdraw the Bond

On January 13, 2006, Lexington filed a Motion for Authority to Withdraw Limitation Bond Upon Settlement of All Insured Claims. That motion, done in anticipation of a possible settlement of the remaining claims asserted by the Claypools, sought a declaration by this Court that, in the event that all of the claims insured by Lexington were settled, that Lexington be allowed to withdraw the Subject Bond. That motion was heard upon expedited hearing on January 23, 2006, at which time the Court denied Lexington's motion. No formal order on the Motion has ever been entered. However, the Minutes from the hearing state that the "Court questions Lexington Insurance Company's standing to bring the Motion for Authority to Withdraw Limitation Bond," indicating that such a motion should more properly have been brought by BDC.

### F. Settlement of Remaining Claypool and Isham Claims

After further settlement conferences, BDC, the Claypools, and Lexington reached a settlement of all claims. The terms of the settlement are confidential, however, the Claypools have released Lexington from any and all obligations under the Policy. On February 6, 2006, as part of said settlement, the Claypools filed a Notice of Acceptance of BDC's Rule 68 Offer of Judgment. See Exhibit

"I". As part of that settlement, it is the Surety's understanding that the Claypools intend to release any *in rem* claim against BDC, including any claim on the Subject Bond.

Thereafter, on February 17, 2006, BDC, through its attorney Robert Miller, filed an Offer to Allow Money Judgment to be taken against Limitation Plaintiff/Defendant Blue Dolphin Charters, Ltd., In Favor of Matthew Isham, Individually Under Fed. Rule Civ. P. 68. See Exhibit "J". That same day, Robert Miller caused to be filed also an **Amended** Offer to Allow Money Judgment to be taken against Limitation Plaintiff/Defendants Blue Dolphin Charters, Ltd. **and Terry Donnelly**, In Favor of Matthew Isham, Individually Under Fed. Rule Civ. P. 68 (emphasis added). See Exhibit "K". On February 21, 2006, Matthew Isham filed a Notice of Acceptance of the Amended Offer of Judgment. See Exhibit "L."

Thereafter, on March 8, 2006, the Ishams filed the pending motion seeking to enforce the stipulated judgment on the bond.

### III. ARGUMENT

Unlike on the previous motion related to this bond, the Surety has standing at this point to object to enforcement of the judgment on the bond pursuant to Rule 65.1 of the Federal Rules of Civil Procedure. The time is ripe for this Court to exercise its equitable powers and release the Surety from its obligations on the bond.

It is undisputed that the claims of Isham against BDC were not covered under the applicable insurance policy issued by Lexington. Defense of those claims was being handled by Robert Miller. After all of the covered claims were settled, BDC and Mr. Donnelly, on their own and through their own individual counsel, determined to settle the claims for a money judgment against not only BDC, but also Mr. Donnelly. In so stipulating, BDC and Mr. Donnelly waived their right to limitation of liability.

The purpose of the bond was to substitute as collateral for the vessel in the limitation action. Upon holding that a limitation plaintiff was not entitled to limitation of liability, Courts have dismissed limitations actions entirely and released the bonds which had been posted in those actions. See In the Matter of Spray II K/S, 1996 WL 451315, * 7 (D.N.J. Aug. 5, 1996) (dismissing limitation action and releasing bonds as "[t]he Court is unaware at this time of any legal basis to hold the bonds issued by plaintiffs.") In this case, by stipulating to a judgment and waiving the defense of limitation, BDC has admitted it is not entitled to a limitation of liability. As in Spray, this Court should thus release the bond posted herein, and dismiss the limitation action.

Moreover, since the claims asserted by the Ishams are not covered under any policy issued by Lexington, requiring the Surety to maintain the bond in the Limitation Action unfairly exposes it to significant non-insured liability. The

Surety therefore asks that the Court exercise the broad equitable powers available to it in this action and correct this problem by denying the Motion and releasing the Surety from any obligation under the Subject Bond.

As a general proposition, a district court sitting in admiralty may exercise equitable powers. Key Bank of Washington v. Southern Comfort, 106 F.2d 1441, 1444 (9th Cir. 1997) (quoting Mosher v. Tate, 182 F.2d 475, 479 (9th Cir. 1950); see also Montauk Oil Trasp. Corp. v. Sonat Marine, Inc., 871 F.2d 1169, 1172 (2nd Cir. 1989)(an admiralty court may use equitable principles to where appropriate to avoid injustice). In particular, it is recognized that a limitation proceeding is "'the administration of equity in an admiralty court[.]'" New York Marine Managers, Inc. v. Helena Marine Service, 758 F.2d 313, 316 (8th Cir.), cert. denied 474 U.S. 850, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985)(finding that there was no provision in the insurance policy of custom in the marine insurance industry requiring an insurer to post security in a limitation action where the result is to expose the insurer to risk beyond its policy limits) (citing Moore-McCormack Lines, Inc. v. Richardson, 295 F.2d 583, 597 (2nd Cir.), cert. denied 368 U.S. 989, 82 S.Ct. 606, 7 L.Ed.2d 526 (1962). A district court has broad discretion to administer a limitation action with "all the ease with which rights can be adjusted in equity[.]" Id.; see also Universal Towing Co. v. Barrale, 595 F.2d 414, 420 (8th Cir. 1979).

In administering a limitation action, a district court has equitable powers to do "substantial justice." See Key Bank of Washington, 106 F.2d at 1444. In exercising its equitable powers, the district court has "the flexibility to 'mould each decree to the necessities of the particular case.'" Grand Canyon Trust v. Tucson Elec. Power Co., 391 F.3d 979, 989 (9th Cir. 2004) (quoting Hecht Co. v. Bowles, 321 U.S. 329, 64 S.Ct. 587, 88 L.Ed. 754 (1944)); see also Koniag, Inc. v. Koncor Forest Resource, 39 F.3d 991, 1001 (9th Cir. 1994).

Accordingly, the district court retains great discretion in determining what constitutes appropriate security in a limitation action. In Re Complaint of Clearsky Shipping Corp., 1997 WL 472663 *2 (E.D.La.); Matter of A & J Towing, Inc., 1997 WL 289396 *2 (E.D.La.). In administering a limitation action, including the approval of security, the district court must consider the rights of all of the parties involved, including the insurers. See Complaint of Paradise Holding, Inc., 795 F.2d 756, 761 (9th Cir. 1986) (quoting New York Marine Managers, Inc., 758 F.2d at 316).

The Subject Bond was filed by Lexington in order to protect the interests of its additional insured, BDC, as to claims brought by the Claypools. Since posting the Subject Bond, Lexington has, on every occasion, acted in the utmost good faith and attempted to do the right thing by its insureds. At the request and insistence of both insureds Isham and BDC, Lexington settled the claims by the Claypools

against Isham. Following that settlement, Lexington continued to defend BDC, based on BDC's potential liability in connection with the actions of Trout. Thereafter, Lexington negotiated and settled the remaining claims of the Claypools against Trout and the Claypools, leaving no potential exposure to its insureds as to those claims. That settlement extinguished any right of the Claypools against the Subject Bond, leaving no Lexington-insured claim against the Subject Bond.

Movants now seek to enforce the uninsured claims on the bond. In exercising its equitable powers, this Court should take into account not only the interests of the parties, but those of insurers. See e.g. The Palmyra, Escurra, 12 Wheat. 10, 25 U.S. 1, 6 L. Ed. 531 (1927) ("It is quite a different question, whether the Court will, in particular cases, exercise its authority, where sureties on the stipulation may be adversely affected injuriously."). The Ishams do not, and cannot, dispute that the Subject Bond which was placed by Lexington constitutes a potential windfall for the Ishams.

But for Lexington having posted the bond with regards to the Claypools claims, no such fund would have existed, and Isham's source of remedy would be limited to the assets of Defendant BDC. Upon withdrawal of the Subject Bond, Isham will be left in the same position which he would have been in had the Claypools never asserted a claim against BDC. The fact that the Claypools asserted such a claim, then settled said claim, should not create an additional

source of recovery for Mr. Isham.  Lexington, when instructed by GAQ&S that the posting of the bond was necessary to facilitate BDC's limitation of liability to the Claypools, posted the Subject Bond in order to attempt in good faith to fulfill its obligations to its insured.  The Ishams should not receive a benefit based on Lexington acting in good faith towards its insureds.  Rather, this Court should allow the Subject Bond to be withdrawn, which will only place the Ishams in the same position they would have been in if the Subject Bond had never been filed.  The Ishams' only "loss" is indisputably a potential windfall.

On the other side of the balancing equation are the interests of the Surety and Lexington, who have in good faith protected the insureds, both through defense and in settlement negotiations, as to all covered claims.  If the Surety is not allowed to withdraw the Subject Bond, then Lexington will have paid on a claim which is not covered under the policies it issued.

The balance of the equities is clear.  The Ishams stand to lose a potential windfall, while the Surety stands to pay claims which are indisputably not insured, and as to which a premium was never collected.  This Court should use its equitable powers to release the Surety form the Subject Bond.

**IV.   CONCLUSION**

For the foregoing reasons, the Surety respectfully requests that this Court deny the Motion and release the Surety from its obligations under the Subject Bond.

DATED:  Honolulu, Hawaii, March 30, 2006.

/s/ Jonathan H. Steiner
JONATHAN H. STEINER

Attorney for Interested Party
LEXINGTON INSURANCE COMPANY