Richard A. Lesser - #5832
    lesser@divelaw.com
Steven M. McGuire, *Pro Hac Vice*
    mcguire@divelaw.com
LESSER & ASSOCIATES, PLC
1 Pearl Street
Redondo Beach, CA 90277
Telephone:  (310) 374-4808
Facsimile:   (310) 372-7715

Attorneys for Claimants/Respondents and
Plaintiffs MATTHEW ISHAM, individually and
as Guardian ad Litem for, HAYDEN ISHAM,
a minor and ROXANNE BEST ISHAM

# UNITED STATES DISTRICT COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF BLUE DOLPHIN CHARTERS, LTD. AND TERRY DONNELLY, AS OWNERS OF THE VESSEL M/V BLUE DOLPHIN, O/N 1082213, FOR EXONERATION FROM AND/OR LIMITATION OF LIABILITY | Civil NO. CV05-00037 HG-BMK<br>[3 Consolidated Cases]<br><br>MATTHEW ISHAM, individually and as Guardian ad Litem for, HAYDEN ISHAM, a minor and ROXANNE BEST ISHAM'S REPLY TO SURETY AMERICAN HOME ASSURANCE COMPANY'S AND "INTERESTED PARTY" LEXINGTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ENFORCING LIABILITY ON BOND |

| | |
|---|---|
| MATTHEW ISHAM, individually and as Guardian Ad Litem for HAYDEN ISHAM, a minor; ROXANNE BEST ISHAM,<br><br>        Plaintiffs,<br><br>        vs.<br><br>BLUE DOLPHIN CHARTERS, LTD. and BLUE DOLPHIN DIVING, LTD., CAPTAIN ANDY'S SAILING, INC., DOES 1 - 50,<br><br>        Defendants. | CIVIL NO.: CV 04 00559 HG-BMK |
| DENNIS CLAYPOOL, individually and as Guardian ad Litem for KRISTEN CLAYPOOL, a minor, SHERYL CLAYPOOL, SCOTT CLAYPOOL, AND KRISTEN CLAYPOOL,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CAPTAIN ANDY'S SAILING, INC., BLUE DOLPHIN CHARTERS, LTD. And BLUE DOLPHIN DIVING, LTD.,<br><br>        Defendants. | CIVIL NO.: CV 04 00570 HG-BMK |

2

**MATTHEW ISHAM, individually and as Guardian ad Litem for, HAYDEN ISHAM, a minor and ROXANNE BEST ISHAM'S REPLY TO SURETY AMERICAN HOME ASSURANCE COMPANY'S AND "INTERESTED PARTY" LEXINGTON INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO MOTION FOR JUDGMENT ENFORCING LIABILITY ON BOND**

I.   INTRODUCTION.

The Opposition to Isham's Motion to execute on the Limitation Bond filed by American Home Assurance and Blue Dolphin Charters is old wine in a new bottle, but with an interesting spritzer added: Lexington Insurance Company has absolutely no standing to appear in this action, as it is neither a party, a limitation claimant, or any type of surety, counsel's designation notwithstanding. One need only examine the bond itself (Exhibit D to the opposition) to note that it was filed with the Court by Blue Dolphin Charters Ltd (hereafter BDC) AND American Home Assurance, with Lexington Insurance Company nowhere to be found . This issue has already been addressed by the Court. The transcript of the prior hearing, as noted on Page 8 of the opposition reads in part: "The Court questions Lexington Insurance Company's standing to bring the Motion for Authority to Withdraw Limitation bond," but then the Surety's Opposition goes on to conclude (erroneously) that there was some indication from the Court that such a motion should have been brought by BDC. The correct interpretation is that such a motion should have never been brought at all, as it is completely outside the spirit and letter of the Supplemental Rules for Certain Admiralty and Maritime

3

claims. Accordingly, the arguments set forth on behalf of Lexington, which comprise virtually the entire opposition, are inappropriate and should not even be considered by the Court.

The only two issues remaining before the Court are whether Isham properly perfected his F(5) claim in a timely fashion, and whether he remains the only claimant against the bond. The answer to both questions is an unqualified "Yes." See the Waiver and Release of Interest in Bond by Dennis Claypool and his family members, the only other F(5) claimants, attached hereto as Exhibit 1.

In an abundance of caution, much of the following brief restates the points Matthew Isham set forth in his earlier opposition to the same request for release of the bond when it was made in January by Lexington Insurance Company alone. That request was properly denied from the bench by the Court.

Just as Lexington Insurance Company attempted to do when it filed its motion to withdraw the limitation bond, Lexington seeks to do so again, this time apparently on behalf of the bonding company. Again they seek to overturn 150 years of settled maritime law, transform the concept of a bond as an irrefutable pledge into a disposable litigation tactic, and finally, in keeping with the earlier submissions to this court on behalf of BDC, restate a completely distorted view of the "facts" as they relate to both Isham and Claypool.

Lexington Insurance, rather than paying for the filing the Limitation Bond "in order to protect the interest of its insured, BDC, as to claims brought by the

Claypools.", instead used the Limitation Act **exclusively** to attempt to deprive the two plaintiffs of their right to a jury trial.  BDC's limitation rights had been protected months earlier as a affirmative defense in its answer to the respective complaints, and specifically in the answer to the Isham complaint answered by Lexington's appointed counsel for BDC and not by its own attorneys. . But despite raising the affirmative defense, filing a limitation action and persistently resisting Isham's right to a jury trial, and because Lexington's strategy behind the limitation no longer provides it any benefit, Lexington (under the guise of the bonding company) asks the court to invoke its equitable powers, turn settled maritime law on its head, and allow it to withdraw the limitation bond and summarily escape Isham's proper F(5) claim, all without citing any legal authority in support of their position.

## II.     Background.

As noted before, the Court is fully aware of the facts and circumstances regarding this tragic incident,so it need not be rehashed

Though claiming once again in the instant opposition that Lexington did not agree to provide a defense to the claims asserted by Isham against BDC, and that the answer was filed by Lexington's appointed attorneys because of "timing issues," it was nonetheless those same attorneys for BDC specifically retained by Lexington, Goodsill Anderson, that responded to Isham's recent motion for partial

summary judgment based upon section 53 violations, an area relating exclusively to the Jones Act claims brought by Isham and having nothing whatsoever to do with the limitation action.

As noted in Lexington' Opposition, their retained counsel did file a limitation action on January 19th, 2005, and concurrently filed a bond on behalf of BDC, obtaining a stay of the Claypool and Isham personal injury suits.

That the filing of the bond was nothing except a litigation tactic is borne out by the actions of then co-defendant *Captain Andy's Sailing* in regard to the personal injury claims that were filed against it in the same actions.  Rather than post a bond and request a stay, *Captain Andy's* chose, in a stipulated agreement with both the Isham and Claypool plaintiffs, to file an undertaking protecting it's limitation rights, **but allowing the two personal injury suits to move forward toward a jury trial**.

This exact offer was specifically rejected by the attorneys appointed and paid by Lexington to represent BDC.  Thereafter asthe Court knows well, BDC vigorously fought against the lifting of the stay and the consolidation of the two personal injury actions, culminating in Judge Gillmor's Order of last summer consolidating those two actions and the limitation action into a single trial.

Refusing to give up however, BDC moved yet again to bifurcate the Isham and Claypool trials, in a motion that was rejected by this Court even before

6

responses had been filed by the respective plaintiffs. Further evidence that the filing of the bond was a thinly disguised litigation tactic, albeit one poorly thought out, abounds. As noted in its Opposition, Lexington did not directly insure BDC, but instead wrote a professional liability policy for dive instructors Matthew Isham and Eric Trout under which BDC was an additional insured, but only as to the action of the two dive instructors regarding their teaching and supervision of divers. Since Trout (the party under whose insurance Lexington has continued to defend BDC) was not a vessel owner, limitation was unavailable to him had the Claypool plaintiffs chosen to proceed with a direct action, a basic tenet of admiralty law that was clearly known to BDC and Lexington at the filing of the limitation action, and which is undoubtedly reflected in the ultimate amount of the confidential settlement on his behalf, as the settlement demand to BDC from Claypool as to Trout's liability was for his one million dollar policy limits.

    Once creating the limitation action however, with the intent of depriving Matthew Isham of a jury trial, Lexington thereby and undisputedly provided him with an In Rem action that did not previously exist, and which was taken full advantage of with the filing of his F(5) claim against BDC. It is undisputed by Lexington that Isham is and always has been a claimant. One need only refer to the initial bond filed with the court to note both the service of the bond on this office, but the designation of Isham as a "claimant."

    Once the court ruled that the stay would be lifted, and that the Isham as well

as the Claypool claims could proceed to a jury trial, only then did Lexington begin to understand the problem it had created for itself. Lexington's counsel's first foray to solve its problem was to request a substitution of the vessel *Blue Dolphin* for the bond. However, upon learning that the First Hawaiian Bank held a $250,000.00 mortgage on the Blue Dolphin, that attempt was abandoned.

    Lexington's next attempt was the previously heard Motion for Authority to Withdraw Limitation Bond Upon Settlement of All Insured Claims. That motion, which the Court summarily denied because , among other things, it had no basis in law, and Lexington had no standing to bring it, was based on grounds identical to those raised in the Surety's Opposition here. However, after that Motion had been filed, Isham and BDC, represented by its counsel in the Isham case, Robert F. Miller, met with Magistrate Barry M. Kurren to discuss a potential settlement range, and with the Judge's approval, reached a settlement figure that resulted in a Rule 68 offer by BDC that was accepted by Isham. Notably, Lexington's appointed counsel for BDC, Randy Baldemoor of Goodsill, Anderson, who was also present in chambers when Judge Kurren agreed to the reasonableness of the proposed amount, made no objection or comment.

    Contrary to the Surety's Opposition papers, it has several other options after it has properly paid out the limitation bond. But none of them involve Matthew Isham. Certainly it should look to whoever was involved in the initial decision making process whereby a bond was filed and a stay requested, rather than taking

8

the route of *Captain Andy's* and submitting an undertaking, while allowing the Plaintiffs' cases to move forward to jury trial, thus still protecting fully the insured interests of BDC. American Home Assurance, as the bonding company, should first look to Lexington Insurance Company, its third party administrator, York Claims Services, or Lexington's appointed counsel Goodsill, Anderson as to why the bond was requested as a litigation tactic in the first place.

    Lexington's involvement in this motion is equally inappropriate as in the prior motion, and although the actual Surety, American Home Assurance, is properly before the court, its ability to raise an opposition is also questionable, as it took no part in the decision to post the bond, but only made the pledge to pay it out. The appropriate course of action would therefore dictate that the Surety pay out the bond plus the agreed interest to Isham as required by the Supplemental Rules, and then pursue a separate action against anyone they deem responsible for having to do so.

    When the equities of this situation are fully considered, and a failed litigation strategy by an insurer for its own benefit in attempting to deprive a seaman who suffered traumatic amputation of his leg of his rights to a jury trial is balanced against that seaman's same rights, supported by his filing of a proper (F)5 claim in the limitation action, the equities are overwhelmingly in favor of Matthew Isham.

## III.   ARGUMENT.

It is no surprise that the Surety has failed to come forward with any legal authority supporting its position. The reason for that is simple; once a party invokes the protection of the Limitation of Liability Act and posts a bond, there is no procedure for simply lifting it. 46 U.S.C. §185.

The Surety cites a only single case in support of its position for withdrawing a bond in a limitation action: In the Matter of Jahre Spray II K/S, 1997 AMC 845, but that case bears no relationship to this one and is based on facts inapposite to those before the Court now.

Jahre Spray II is an oil spill case in which the vessel *Jahre Spray* filed a Limitation action following an oil spill in the Delaware River. As required by Supplemental Admiralty Rule F(1), the court ordered the vessel to post a bond. It was later determined that the claims against the *Jahre Spray* fell within the scope of the Oil Pollution Act of 1990 ("OPA").[1]  OPA, which specifically addresses its interplay with the Limitation of Liability Act, provides that those who fall within

---

[1] Id. at 13 – 14. The Oil Pollution Act of 1990 was enacted in response to the Exxon Valdez oil spill. As part of this comprehensive legislation, the federal government determined that the Limitation of Liability Act should not be applied to claims stemming from oil spills. That intent is clearly expressed in Section 2702(a) of OPA which provides "*notwithstanding any other provision or rule of law*, and subject to the provisions of this chapter, each responsible party . . . is liable for the removal costs and damages specified in subsection (b) that result from such incident." 33 U.S.C. 2702(a). See Matter of Oswego Barge Corp., 664 F.2 327, 340 (2d Cir. 1981)(the "notwithstanding" clause of the former Clean Water Act meant that remedies in the Act were not modified by preexisting law.).

the category of "responsible parties" are not entitled to limit their liability. Id. at 13 - 18.  Because the *Jahre Spray* had been designated a "responsible party" by the United States Coast Guard, the court dismissed the limitation action in its entirety finding there was no legal basis upon which to continue the proceedings under the Limitation of Liability Act. Id. at 22.

There is no logical analogy between Jahre Spray and this case.  The reason the court lifted the bond in Jahre Spray was not because the Court found it was unfair or inequitable to require the petitioner to post a bond, as the Surety argues here, but was because the vessel had no legal grounds to limit its liability in the first place as OPA's statutory scheme expressly prohibited limitation. Thus, no comparison between that case and this one can be made.

The Surety's remaining cases all deal with a court's equitable power in admiralty cases. None of them support, or even address, the relief the Surety seeks here, that is to withdraw a bond that has already been posted in the face of a valid F(5) claim.  The case New York Marine Managers, Inc. v. Helena Marine Service, which the Surety cites as support for its position that an insurer is not required to post security in a limitation action where the result would expose the insurer to risk beyond its policy limits, is likewise irrelevant. In that case, the insurer moved for a declaratory judgment that it was not required to post a bond in the first place, which the court granted, and a bond was never posted.  It did not address the situation where a bond was already voluntarily posted,  F(5) claims were made,

and then the insurer sought to withdraw the bond.

## IV. CONCLUSION.

The Court should enter judgment against the bond in favor of Matthew Isham for the following reasons: (1) there is no procedure for withdrawing a bond that has already been posted in limitation action in the face of a valid F(5) claim; (2) equity would dictate that a party who chose to file a limitation action solely to deprive a plaintiff of his right to a jury trial should stand behind its actions and not be permitted to withdraw a bond because its litigation strategy failed, and (3) Lexington Insurance has no standing to object to Isham's execution on the bond, while American Home Assurance Company's complaints are more properly directed toward those who made the decision to post it.

Limitation claimant Matthew Isham respectfully requests that the Court enter judgment against the bond in the amount of $435,000.00 with interest thereon from the date of security.

Dated: Honolulu, Hawaii, April 4, 2006.

                LESSER & ASSOCIATES, PLC

                /s/Richard A. Lesser
                RICHARD A. LESSER
                Attorneys for Claimants/Respondents
                and Plaintiffs MATTHEW ISHAM, individually
                and as Guardian ad Litem for, HAYDEN ISHAM,
                a minor and ROXANNE BEST ISHAM

C:\Documents and Settings\Steven\Local Settings\Temporary Internet Files\OLKEC\REPLYFINAL.wpd